## THE SANTA BARBARA.

(Circuit Court of Appeals, Second Circuit. January 14, 1920.)

No. 85.

1. SEAMEN ⬡29(2)—FAILURE TO MAINTAIN EQUIPMENT FURNISHED DOES NOT ESTABLISH UNSEAWORTHINESS.

If the failure to maintain in position while at sea a chain furnished for use in cleaning the smokestack was improper, it was merely the negligence of the master, not a failure by the owner to make the vessel seaworthy, and does not render the vessel liable for injuries to a seaman, who fell while attempting to replace the chain.

2. SEAMEN ⬡29(4)—VESSEL NOT LIABLE FOR INJURIES RECEIVED FROM OVERTAXING STRENGTH.

Where the work which a seaman was ordered to do was not unsuitable to his strength, but of his own volition he overtaxed his strength and fell, the vessel is not liable for damages for the resulting injuries.

3. SEAMEN ⬡11—RECOVERY OF MAINTENANCE IS BARRED BY LEAVING HOSPITAL FOR INSUFFICIENT REASON.

Where an injured seaman was placed in a marine hospital by the vessel's master, but left immediately because he was unsatisfied with the first meal served, the vessel is not liable for his maintenance and care thereafter at home and in other hospitals.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by Harris Appelbaum, as guardian ad litem of Herman Appelbaum, against the steamship Santa Barbara; the Grace Steamship Company, claimant. Decree for libelant (255 Fed. 231), and claimant appeals. Reversed and remanded, with directions to dismiss libel.

Libelant was 19 years old when he received the injuries hereinafter stated. Although without previous sea experience (as he testified), he regularly shipped on the Santa Barbara as an "ordinary seaman." After he had so served for something over two months, the vessel was lying off Iquique, Chile, at which time libelant by his own account was strong, healthy, and apt for physical labor.

The smokestack of the steamship was stayed by the usual guys leading to shackles fastened near the smokestack head. Contiguous to the upper end of each or most of these guys hung a pulley block, through which a chain or rope might be reeved and used (inter alia) for hauling up to the top of the smokestack a boatswain's chair in which men might sit for cleaning and painting the stack. Opinions differ as to the advisability, and indeed the safety, of maintaining chains or lines in these pulley blocks when at sea; the captain of the Santa Barbara preferred not to have them in place.

At Iquique libelant was ordered to "shin up" a guy and reeve a rope through the pulley block at the upper end thereof, in order that the chair might be rigged and raised or lowered at will. He had never done this particular work before, and there is some evidence that he protested; but we find that the work was suitable to his apparent strength, and that no reason existed for his not doing it as well as any other member of the crew. He climbed the guy, and found difficulty in reeving the rope, owing either to the smoke and dirt naturally accumulated at the smokestack head, or because the gaunt line he carried up was rather large for the pulley, or for both reasons.

He was not compelled to remain aloft any longer than he felt able, but he stayed up "10 or 15 minutes." He says he then felt tired, started to descend, lost his grip on the guy, and fell to the deck, breaking his kneecap, and suffering contusions. He received surgical attention from shore doctors both at

Iquique and at Balboa. On arrival in New York he was sent to the Marine Hospital, but refused to stay there, because the first meal offered him elicited the comment: "That ain't no meal for a man with a broken knee who has got a good stomach; I want to eat." Thereupon he went to his home, which happened to be in New York, and remained either there or in a local hospital until cured as far as he probably can ever expect to be. He walked either not at all or with a crutch for about six months; one leg is probably somewhat "stiff" for life. No other injury was serious.

This libel was filed on the theory that for various reasons the Santa Barbara was not in a "seaworthy condition," that by reason of such condition libelant had received the injuries aforesaid, and that he was therefore entitled to recover the expense of his "surgical and medical treatment" and to a large additional sum by way of indemnity or "damages." The trial court held that libelant could not recover for "maintenance and cure," because he "was not warranted in arbitrarily leaving the Marine Hospital without some good reason," but that he was entitled "to a substantial sum for the injury [he had received] on the ground that the owners failed to supply and maintain in good working order the pulley and chain in question." Decree for the libelant accordingly for $4,125.65, and claimant appealed.

Burlingham, Veeder, Masten & Fearey, of New York City (Morton L. Fearey, of New York City, and F. A. Whitney, of Rio de Janeiro, Brazil, of counsel), for appellant.

Foley & Martin, of New York City (George V. A. McCloskey and James A. Martin, both of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The general law applicable here we have so recently restated, that further exposition is unnecessary. Hanrahan v. Pacific, etc., Co., 262 Fed. 951, —— C. C. A. ——, and Roeblings, etc., Co. v. Erickson, 261 Fed. 986, —— C. C. A. ——, both filed November 12, 1919.

[1] The reason given below for awarding indemnity—that "the owners failed to supply and maintain in good working order the pulley and chain in question"—is not sustained by the law applicable to the proven facts. The chains were supplied; whether unseaworthiness would have resulted, had that not been done, is a matter not before us. Whether they should be "maintained," or retained in the pulleys, and left stretched along the guys contributing weight without strength, while the steamer tossed at sea, is a matter wholly within the discretion of the captain. If that discretion was unwisely exercised, it was at most no more than his personal negligence in handling or mishandling good and proper appliances duly furnished by the owners. As nothing was defective in fit or material, and everything suggested as proper even by libelant's proctor, was provided for the ship, we hold that no unseaworthiness was shown.

[2] Whether unseaworthiness in law may not be produced by nonuse or misuse of good and sufficient adjuncts to or appliances of a good ship, and whether the resulting condition can give rise to action for indemnity under the doctrine of The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760, are also questions not now before us, because it is plain that libelant, whether properly rated as ordinary seaman or landsman, was set a task not unsuited to his strength, and received (by his own account) injury solely from overtaxing that strength.

It is certain that the absence of chains or ropes in the blocks contributed to the ship's capacity to resist the perils of the sea, and therefore made for seaworthiness, rather than the opposite. Their insertion for purposes of cleaning or repair was as simple as it was necessary, and to hold that unseaworthiness arose when cleaning time came, although it had not previously existed, is quite impossible.

[3] Libelant's injury was peculiarly within the rule as to maintenance and cure. It was proffered, and rejected by libelant. His conduct in leaving the Marine Hospital leaves us without any basis for allowance in his favor. There is some testimony as to his subsequent expenses, but everything that he preferred to procure for himself he might have had without any such expenditure.

Decree reversed, without costs, and cause remanded, with directions to dismiss libel, also without costs.