## AHMED v. UNITED STATES.

No. 60, Docket 21372.

United States Court of Appeals Second Circuit.

Argued Nov. 4, 1949.

Decided Nov. 25, 1949.

John F. X. McGohey, United States Attorney, New York City, Proctor for appellant; Corydon B. Dunham, New York City, of counsel; Xavier N. Sardaro, New York City, Advocate.

Joshua S. Lev, New York City, Proctor for appellee; Herman B. Gerringer, New York City, Advocate.

Before L. HAND, SWAN and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is a libel for maintenance brought by an Egyptian seaman who was employed as an oiler on the appellant's merchant vessel "Samuel Ashe."[1] During the voyage a previously arrested tubercular condition became reactivated and aggravated to an extent requiring hospitalization of the libellant as an inpatient from June 6, 1944 to July 8, 1946 and as an outpatient from the latter date until October 6, 1948. The decree awarded him maintenance from July 8, 1946 to December 1, 1949 at $5.00 per day, less sums received during that period as public relief and from a short period of private employment, the total award being $6,020. The appellant does not question the amount of the award if the seaman is entitled to any recovery, but contends that his conduct was such as to forfeit his right to maintenance.

In 1943, while serving on an American vessel, Ahmed became sick and was hospitalized at the United States Marine Hospital in Puerto Rico. From there he was transferred in July 1943 to the Marine Hospital at New Orleans, Louisiana, where his condition was diagnosed as "tuberculosis of the lung moderately far advanced." In the hospital his condition improved and at the end of August his sputum was found to be negative. On December 9, 1943 he was discharged at his own request against medical advice; he was cautioned not to work for several months and then to do only light work for some time. About a week after being discharged, Ahmed sought employment as an oiler on a ship operated by Spencer Kellogg Company. He received the routine physical examination and was passed as fit for duty. The voyage for which he signed on ended January 19, 1944. Between that date and April 18, 1944 he was unemployed because he found no work.

On the latter date he signed on as an oiler on the steamship Samuel Ashe after a physical examination in which he was again found fit for duty. Both on this and the previous examination his chest was tested only stethoscopically. In neither examination did he volunteer information that he had previously been treated for tuberculosis and advised not to work for several months. At the trial he testified, and the court found, that during the period of approximately four months between his discharge from the New Orleans hospital and his signing on for the voyage of the Samuel Ashe he felt in good health and believed that he was well enough to perform the duties of an oiler on ships.

As already stated, Ahmed became ill during the voyage of the Samuel Ashe and had to undergo treatment for advanced tuberculosis of the lungs at various hospitals from June 6, 1944 to July 8, 1946. The last of these was the Marine Hospital, Neponsit Station, Rockaway Beach, New York. There he was a rather restive patient. He was discharged on the date last mentioned to outpatient status with a notation that he was emotionally unstable and not suited for institutional care. He continued to receive outpatient treatment at Neponsit Station until October 6, 1948.

The appellant urges that a seaman who is sick and holds himself out as fit for duty cannot recover maintenance and cure. The case relied upon for this proposition, Tawada v. United States, 9 Cir., 162 F.2d 615, does not support so broad a contention. There it was held that a seaman who, knowing that he was afflicted with a disabling disease, concealed the fact and held himself out as fit, was not entitled to maintenance. Here the court found that Ahmed believed himself in good health. The appellant argues that Ahmed should have called his quiescent tubercular condition to the attention of the physician who examined him as a prospective member of the crew. No authority has been cited which supports this argument. On the contrary, long ago it was held that a seaman

---

1. The libel contained another count which need not be described as it was dismissed and the libellant has not appealed.

who believes himself fit for duty and signs on without any fraudulent concealment, is entitled to maintenance and cure, notwithstanding a previous condition of ill health. Neilson v. The Laura, 17 Fed.Cas. page 1305, No. 10,092.[2] When a shipowner undertakes by a physician's examination to satisfy himself as to the fitness of a prospective member of the crew, we think that such examination should be proof of the seaman's condition unless he conceals something which he knows to be relevant or which he can reasonably be charged with so knowing.[3] Had Ahmed's quiescent tuberculosis been reactivated by his service on the Spencer Kellogg ship and had he sued that shipowner, perhaps he could reasonably be charged with knowing that he ought to have disclosed that he was disobeying directions received from the New Orleans hospital only a few days before he signed on. That question is not presented nor decided. Those directions told him to keep away from work for "several months." When he signed on for the voyage of the Samuel Ashe four months of apparently good health had elapsed, he had twice been passed by doctors after examination as fit for duty as an oiler and he had felt no ill effects from the voyage taken in disobedience of the hospital's directions. Under these circumstances we think it would be most unreasonable to expect an ignorant seaman, whose testimony shows how litttle he understood the English language, to disclose his hospital experience of four months before. He felt in good health; the examining doctor passed him as fit for duty, and he accepted the doctor's report at face val-

ue. We do not think that he was required to do more.

■ The appellant's second contention is even more tenuous than the first. It is argued that by obtaining at his own request a discharge to outpatient status from the Neponsit hospital he forfeited his right to maintenance. To support this proposition the appellant cites cases in which the seaman left the hospital without leave of the authorities,[4] or was discharged from a hospital for disciplinary reasons,[5] or refused hospitalization when offered.[6] Ahmed's case is quite different. It is true that he did not adapt himself easily to hospital routine. At one point he engaged in an altercation with a nurse who attempted to give him food which his religious scruples forbade him to eat. Becoming convinced that he would be better off outside the hospital, he requested discharge. It was granted, with the notation that he was emotionally unstable and not suited for institutional care. But his discharge was to outpatient status and for more than two years thereafter he continued to receive outpatient care at the Neponsit Station. Assuming arguendo that a shipowner ought not to be charged with consequences resulting from temperamental idiosyncracies of a libellant and that the seaman must be held to the objective standard of what a reasonable person would think best for himself, we are concerned only whether, if Ahmed had been more tractable, he would have got well before the end of the time during which he was allowed maintenance. That has not been proven.

Decree affirmed.

2. Compare Writer v. The Richmond, 30 Fed.Cas. page 718, No. 18,104, where concealment was fraudulent. See also Lindquist v. Dilkes, 3 Cir., 127 F.2d 21; Burns v. United States, D.C.E.D.Pa., 62 F.Supp. 603; Sanz v. Isbrandtsen Co., Sup., 88 N.Y.S.2d 486.

3. See Lindquist v. Dilkes, 3 Cir., 127 F.2d 21.

4. Bailey v. City of New York, 2 Cir., 153 F.2d 427; The Santa Barbara, 2 Cir., 263 F. 369.

5. Meyer v. United States, 2 Cir., 112 F.2d 482.

6. United States v. Johnson, 9 Cir., 160 F. 2d 789.