**Earl SAAR**

v.

**SUN OIL COMPANY.**

**No. 345.**

United States District Court
E. D. Pennsylvania.
Oct. 12, 1954.

Stark & Goldstein, Philadelphia, Pa., for libellant.

Krusen, Evans & Shaw, Philadelphia, Pa., for respondent.

CLARY, District Judge.

This is a libel in admiralty by a seaman for maintenance arising from a disability which manifested itself while he was serving on respondent's ship and which continued for a number of days after the end of the voyage thereof. Claims for wages and cure were made in the libel but the former was not pressed at the trial and the latter was dropped in that libellant received all necessary treatment from the United States Public Health Service at no cost to himself. There is no dispute over the amount due libellant if respondent is found liable.

Upon pleadings and proof I make the following

### Findings of Fact

1. Libellant was at all times material a seaman in the United States Merchant Marine.

2. Respondent is a corporation which at all times here material owned and operated the motorship "Sun", which ship was engaged in coastwise and foreign service.

3. Libellant entered upon employment by respondent as a member of the Crew of the M. S. "Sun" from April 20, 1952 until the end of that voyage on May 4, 1952. Libellant has received all wages due to him for said period of employment.

4. The voyage with which this libel is here concerned was from Marcus Hook, Pennsylvania, to Mereaux, Louisiana, and return.

5. About three days before the return to Marcus Hook libellant experienced vomiting, weakness, a burning or itching sensation of the rectum and passed blood in his stools.

6. The Master of the "Sun" was informed of these continuing conditions by the libellant upon arrival at Marcus Hook and the issue of a "hospital slip" was refused libellant.

7. Respondent's personnel department did, however, issue a "hospital slip" to libellant upon request on the following day and he reported to the United States Public Health Service in Philadelphia for treatment.

8. Libellant was given outpatient treatment at the clinic on six visits from May 7, 1952 to May 26, 1952, and on the latter date was discharged and given a fit for duty slip. During this period libellant was certified as being unfit for duty by the clinic.

9. The treatment administered at the clinic consisted of various laboratory tests, including examination of stool specimens, all of which were negative, sedation, vitamins, and prescribing a salve to allay the rectal itching. The diagnosis, which was made on the date of discharge by the clinic, was pruritas ani. Libellant was unfit for duty during this period and his ailment was of organic origin.

10. Libellant had undergone a pre-employment physical examination on April 17, 1952 by two physicians employed by respondent and had been passed by them as suitable for employment.

11. The physician conducting that part of the examination noted an abdominal scar on libellant and was truthfully informed by libellant that it was the result of an operation performed many years ago for a perforated gastric ulcer.

12. In answer to the physician's question, libellant stated that he had had no past serious illnesses other than that necessitating the aforementioned surgery.

13. Libellant had, in the Summer of 1951, undergone treatment for about four weeks at the Baltimore Marine Hospital for vomiting, nausea, and the passage of blood. He had been discharged as fit for duty upon disappearance of these symptoms after a regimen of rest and soft diet.

14. Libellant had received treatment in March, 1952, for a period of four weeks, at the Marine Hospital Outpatient Clinic in New York for pinworms which ailment had at that time caused itching of the rectum. He was there given a fit for duty slip after treatment.

15. At the time of his pre-employment examination and upon entering the service of the M. S. "Sun", libellant was free of any of the above mentioned symptoms, felt well, and considered himself fit to undertake employment as a seaman. He performed all duties assigned him on the ensuing voyage.

16. Libellant gave what he, in good faith, considered to be truthful answers to all the questions put to him on examination by respondent's physicians.

17. Respondent's examining physicians looked for and found no excoria-

tion, inflammation, fissure or other abnormality of the rectum and so stated on their report to respondent.

18. There has been no recurrence of the symptoms for which libellant was treated upon his discharge from the M. S. "Sun".

19. Libellant had no earnings during the period May 4, 1952 to May 26, 1952, while being treated by the Public Health Service at Philadelphia.

20. Maintenance during the above period was at the then current rate of $8.00 per day.

21. Libellant has made demand of respondent for maintenance for the above period of disability and said demand has been refused.

## Discussion

■ Respondent's position is that Saar's disability was either a prolongation or aftermath of a serious illness (pinworms) for which he received treatment in March, 1952, or was psychogenic, and not the result of former illness, and was hence a result of his own willful conduct for the results of which maintenance is not recoverable. If the former is the case, respondent argues that Saar was under a duty to disclose this ailment to its physician and in failing to do so must be charged with the exercise of such bad faith as to bar his right to maintenance. The principles enunciated in Lindquist v. Dilkes, 3 Cir., 1941, 127 F.2d 21, 23; also Tawada v. United States, 9 Cir., 162 F.2d 615, and Burns v. United States, D.C., 62 F.Supp. 603, are cited in support of this contention. The language of the Lindquist opinion, taken out of context, at first appears helpful to respondent's cause but when viewed in the setting of the facts of the case could scarcely be more damaging. There, the seaman, without previous examination, entered service of the vessel suffering, and having suffered for a long period, a chronic and progressively worsening urinary ailment of which he was well aware. The Circuit Court [127 F.2d 22] agreed with the conclusion of the District Court that,

" 'We believe, however, that the condition as it then existed was not of sufficient seriousness as to create in the mind of the libellant any doubt as to his ability to perform the services which would ordinarily be required of him.' " This Court is not convinced that Saar was aware of any persistent effects of the condition for which he had undergone treatment, if any did then exist, and it is convinced that he in good faith believed he could perform " 'the services which would ordinarily be required of him.' " It is not necessary to decide what effect a formal pre-employment physical examination by licensed physicians has on a seaman's duty to disclose past disability but it seems unreasonable to believe that it should be heavier than when he is accepted for employment only on the strength of his express or necessarily implied representation of fitness for maritime duties. Indeed, many laymen would conclusively accept the favorable recommendation of a physician for employment after an examination, even though cursory by medical standards, as convincing assurance to themselves that their health was in all respects good. It is also true beyond dispute that an uneducated layman's concept of what is, or is not, a "serious illness" is likely to have limits difficult of definition and, hence, he is not to be lightly accused of bad faith in asserting that he has not suffered "serious illness".

Tawada v. United States, supra, and Burns v. United States, supra, are likewise on their facts not helpful to respondent, though the statements of law contained therein are undoubtedly correct. In both cases it was convincingly shown that the seaman could not but have known at the time he was employed that he was then suffering from a indisputably serious physical ailment which was progressive and virtually certain to ultimately disable him.

■ Respondent's second line of argument is that Saar's diagnosed disability, pruritas ani, is psychogenic or originated in his mind and was a nervous

disorder rather than organic, and that an illness of such genesis gives rise to no liability for maintenance. It is unnecessary to consider what the legal consequence of such a disorder might be for on the existent record a finding that Saar suffered a psychogenic infirmity would be clearly erroneous. The only testimony to the effect that such a state of health existed was that of respondent's examining physician and his testimony was only that pruritas ani "may" have a psychogenic background. On cross-examination he testified that if a patient such as Saar suffered from pruritas ani of psychogenic origin objective symptoms would very likely be observable which were not found when Saar was examined. The most that can be said for respondent's case in this regard is that the possibility of a psychogenic disorder has been pointed out but there is certainly nothing which rises to the level of legal proof of its existence. This Court does not deny that the possibility exists but neither will it base an affirmative finding on such nebulous evidence.

■ Saar has a stronger case than that on which libellant prevailed in Ahmed v. United States, 2 Cir., 1949, 177 F. 2d 898, and is entitled to recover under the principles therein set forth.

Conclusions of Law

1. This Court has jurisdiction over the parties and the subject matter of the action.

■ 2. Libellant was under no duty to volunteer to respondent's physicians his past detailed clinical history at a time when he considered himself to be in good health and which he in good faith did not believe had any appreciable bearing on his fitness for employment, said history not having been elicited by the questions of the examining physicians.

3. Libellant is entitled to maintenance from respondent for the period May 4, 1952 to May 26, 1952, or twenty-three days, at the rate of $8 per day, a total amount of $184, with interest at the rate of 6% from May 26, 1952, until paid.