Daisy HAZELTON, Administratrix of the Estate of William T. Hazelton,

v.

**LUCKENBACH STEAMSHIP COMPANY, Inc.**

No. 54–56.

United States District Court
D. Massachusetts.

Sept. 30, 1955.

---

Myron Boluch, Thomas H. Walsh, Boston, Mass., for plaintiff.

Nathan Greenberg, Boston, Mass., for defendant.

ALDRICH, District Judge.

This is a suit in admiralty, essentially for maintenance and cure, with an additional count for unpaid wages. The seaman having died, the action was brought by his administratrix, but for convenience the deceased will be referred to as libellant.

On or about November 10, 1952, libellant, who had been an engine-room wiper for some years, applied to respondent and was referred to its pre-employment examination clinic. Respondent's physician found him in good health and fit for duty. In the course of the examination he asked libellant whether he had ever been hospitalized or undergone any operations or had any serious illnesses or injuries. Libellant disclosed a minor operation in 1947 and denied all other medical history.[1] In fact, from at least

---

1. Libellant contends that since the physician could not affirmatively recall the incident he was precluded from testifying from his records and his routine practice.

as early as 1945, he had been hospitalized almost annually because of gastric ulcers. In September, 1952, he had spent a week in the hospital following complaints of abdominal pain of two months duration coupled with certain objective symptoms not necessary to detail. He received considerable dietary and medical treatment, and on discharge as "improved" was given a "fit for duty" certificate. He was instructed, however, to return in three months, or sooner if his symptoms reoccurred.

Respondent, in ignorance of libellant's prior medical history, signed him on for a voyage to Seattle and return. On December 6th, during the voyage, libellant's pains returned, and on December 15th he was discharged on a master's certificate for hospitalization at Seattle. At this hospital all of his September symptoms reoccurred, but with some additional difficulties, which were diagnosed as cancer. An operation was performed, but it did not effect a cure. Thereafter he was transferred to the U. S. Public Health Hospital in Boston. He remained in contact with this hospital, either as an in-patient or an out-patient, until he died on October 30, 1953, never having been again fit for duty.

Respondent's only defense is an allegation of fraud in connection with libellant's employment. See former opinion herein, D.C., 127 F.Supp. 259. Libellant's response to this is that the "fit for duty" certificate relieved him of any such charge. With this I cannot agree.

It has been said that because of the unusual close relationship a shipowner bears to a seaman the latter owes him a high duty of good faith, particularly in the initiation of the employment. Because the obligation to pay maintenance is independent of fault, and imposes absolute liability subject to certain infrequent exceptions, an analogy has properly been drawn to the formation of insurance contracts. See Lindquist v. Dilkes, 3 Cir., 127 F.2d 21. Hence it is uniformly recognized that the failure of the seaman seeking employment to inform the shipowner of a disabling disease of which the seaman is aware is a breach of duty. Tawada v. United States, 9 Cir., 162 F.2d 615; Ahmed v. United States, 2 Cir., 177 F.2d 898; Burns v. United States, D.C.E.D. Pa., 62 F.Supp. 603; cf. Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 316–317, 48 S.Ct. 512, 72 L.Ed. 895.

The measure of this obligation is subjective, and it might properly be found that a seaman who had been discharged from the hospital as fit was not sufficiently aware of the extent of his disease to call into play a duty of spontaneous disclosure. This, however, is not the case at bar, because here I find there was an affirmative misrepresentation, as distinguished from the mere failure to disclose which is sometimes loosely described as concealment. I have no difficulty in finding, in the light of his frequent hospitalizations and the obvious possibility that he would continue to pursue a course so consistently followed in the past, that he made knowingly false and material misrepresentations. Belief that he was fit at the moment, if he had such, afforded no justification for this.[2]

If the rules of insurance were applied to the fullest extent respondent could accordingly rescind for misrepre-

This contention is answered in Santarpio v. New York Life Ins. Co., 301 Mass. 207, 16 N.E.2d 668.

2. The difference between failure to volunteer and outright lying was adverted to by Judge Clark in Lindquist v. Dilkes, supra. Precisely what this difference may be need not be determined at this time, but essentially I believe it the difference between not revealing matters so significant that the seaman must be presumed to know the shipowner would consider them important, and consciously denying matters of less significance, but which are shown to be important to the owner by his act of inquiry. Cf. Lipscomb v. Groves, infra, and Stipcich v. Metropolitan Life Ins. Co., supra; Saar v. Sun Oil Co., D.C.E.D.Pa., 124 F.Supp. 684. A perhaps less exact approach may be found in those cases which suggest that the prospective seaman by silence warrants his fitness. Rosenquist v. Isthmian S. S. Co., 2 Cir., 205 F.2d 486, 489.

**528**

sentation and avoid all future liability. The analogy, however, is not complete. It is impossible to rescind *ad initio* a contract of employment insofar as it has been already performed. The obligation to pay maintenance arises from the attachment of the seaman to the ship, The Bouker No. 2, 2 Cir., 241 F. 831, in other words, from performance. Accordingly, I do not feel that as to this the employer has a right to rescission. It has only the defense of misconduct, or fraud, which, whatever may be its extent in other situations, should not, in the light of the tenderness which courts exhibit towards seamen, be effective unless the fraud was a direct and affirmative cause of the liability. That is to say, I hold that the fraud must contribute to the loss. Lipscomb v. Groves, 3 Cir., 187 F.2d 40.

■ This is an affirmative defense, Murphy v. Overlakes Freight Corp., 2 Cir., 177 F.2d 342, certiorari denied 339 U.S. 913, 70 S.Ct. 573, 94 L.Ed. 1339, and I do not find that it is made out. While it is true that many of the symptoms which brought about libellant's discharge to the hospital in December, 1952, were consistent with the reoccurrence of his ulcers, admittedly all of them were not. The cancer which he was then found to have was not of the stomach or duodenum. It was both an independent and an unrelated condition, and, which is more important, far more serious. Paradoxically, even some of the symptoms which might otherwise be attributed to a reoccurrence of the ulcer may in fact have been due to the cancer. Furthermore, his serious disability which lasted until his death, was not only adequately accounted for by the cancer, but was unlikely to be due, at least in any such extent, to his former condition which he had failed to disclose.

■ The claim for unpaid wages for the balance of the voyage after libellant had been put ashore would normally follow the claim for maintenance. Ward v. American President Lines, D.C.N.D. Cal., 95 F.Supp. 609. In this case, however, it does not. Respondent's obliga-

tion to pay future wages was merely a matter of executory contract, and as to this I hold it had the usual freedom of contracting parties to rescind for material misrepresentation. This claim is denied.

■ Libellant seeks interest. The case being in admiralty, and there being no substantial dispute as to the amount and rate of maintenance, the claim is sufficiently liquidated to bear interest from the date payment was due. Cf. Moore-McCormack Lines v. Amirault, 1 Cir., 202 F.2d 893. It does not appear when the administratrix was appointed, so I will award interest from the date of suit.

Judgment for libellant for $1,400, with interest in the amount of $78, and costs.