**Patrick CAWLEY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 18, Docket 25243.

United States Court of Appeals Second Circuit.

Argued Oct. 9, 1959.

Decided Nov. 23, 1959.

Waterman, Circuit Judge, dissented.

George L. Spector, New York City, Sachs & Spector, New York City. Sam Panish, New York City, of counsel, for petitioner-appellant.

Cornelius W. Wickersham, Jr., New York City, Frances Thaddeus Wolff, Asst. U. S. Atty., Brooklyn, N. Y., of counsel, for appellee.

Before HAND, WATERMAN and FRIENDLY, Circuit Judges.

HAND, Circuit Judge.

The petitioner, Cawley, appeals from an order denying his petition for naturalization, filed under § 1441(a) (2) of Title 8 of the U. S. Code. He was born in the Philippine Islands, but at the time of filing his petition he had served as a seaman on six American ships, between December 20, 1944 and June 9, 1949, for an aggregate of four years, two months and three days. He had also previously served for over four years upon a ship, owned by a foreign corporation whose "home port" was Manila. On this showing the "Naturalization Examiner" appointed for the purpose, held that he had not brought himself within § 1441(a) (2) and "recommended" that his petition be denied. Judge Rayfiel accepted the "recommendation," and denied the petition, but granted him a rehearing in which he supplemented his original evidence by proving that, in addition to his service on the ship whose "home port" was in Manila, he had served on the American motor vessel, Chant, on an "inbound" voyage from Manila, P. I. to San Francisco, California, from August 5, 1941 to October 6, 1941—a period of two months and one day—which gave him an aggregate of four years, four months and four days, but still left a deficit of seven months and twenty-six days. However, shortly before the ship reached San Francisco on this voyage he was taken ill, and became unable any longer to discharge his duties as junior engineer. Upon her arrival he was taken from the ship and sent to a hospital in San Francisco from which he was transferred to a United States Marine Hospital in New Mexico, where he remained until he was discharged on November 7, 1944. It does not appear what was his illness, but the appellee argues that it was tuberculosis, already latent when he signed on at Manila. *Arguendo* we shall so assume, although, as has just appeared, he was able to discharge his duties until shortly before the ship reached San Francisco. At any rate, there is no evidence that, when he signed on at Manila, he supposed that he would be disabled on the "inbound voyage," or, for that matter, that he did not mean to help work the ship back to Manila. Although it is true that a seaman is not entitled to "maintenance and cure," if he knows when he signs on that he will not be able to perform his duties during the voyage, he does not warrant his physical soundness. In Ahmed v. United States, 2 Cir., 177 F.2d 898, 899, we held in favor of a seaman under much more provocative circumstances than those at bar; for he had

been previously treated for tuberculosis and had disregarded medical caution "not to work for several months and then to do only light work for some time."

■ The appeal therefore turns upon whether under § 1441(a) (2) of Title 8, if a seaman has become incapacitated by illness during the voyage and is entitled to maintenance and cure, he may add the time of his detention in hospitals as part of the aggregate of five years during which he has "served honorably or with good conduct." It must be owned that at first blush this appears to be an untenable gloss upon the section. On the other hand, unless they explicitly forbid it, the purpose of a statutory provision is the best test of the meaning of the words chosen. We are to put ourselves so far as we can in the position of the legislature that uttered them, and decide whether or not it would declare that the situation that has arisen is within what it wished to cover. Indeed, at times the purpose may be so manifest as to override even the explicit words used. Markham v. Cabell, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165. We do not have to go so far in the case at bar, but we did resort to the purpose of this section in United States v. Camean, 2 Cir., 174 F.2d 151, 152, and decided that the term, "vessels of the United States," in § 1441(a) (2), which literally meant vessels owned by American corporations, should be construed to include a vessel whose title was in a foreign corporation all of whose shares were owned by an American corporation. In so deciding we relied upon the fact that one of the two purposes of Congress was "that the alien's service shall expose him to a scrutiny which is the measurable equivalent of actual residence."

It appears to us that a seaman retained in a United States hospital is "expose(d)" to a "scrutiny" as likely to disclose whether he "is a person of good moral character, attached to the principles of the Constitution of the United States and well disposed to the good or-

der and happiness of the United States," § 1427(a) of Title 8, as though he were on shipboard for the same period; and no one would maintain, we believe, that a sick seaman while on board is not "serving," though he cannot literally do so. Does it make any difference if the voyage ends before the cure is completed? The privilege is of very ancient origin; apparently it goes back to the Twelfth Century (Norris, The Law of Seamen, § 537); and so far as we have found, such part of the "cure" that may extend beyond the end of the voyage has never been considered different from that which precedes it. We can see no reason to make an exception in the case of naturalization. Consider the language, for example, of Justice Story in Reed v. Canfield, 20 Fed.Cas.No.11,641, pp. 426, 428: "The voyage of the ship must, so far as the seamen are concerned, be deemed to commence, when they are to perform service on board, and to terminate, when they are discharged from further service. "The title" [sic] "to be cured at the expense of the ship is co-extensive with the service in the ship. The seaman is to be cured for injuries and sickness, while he is in the ship's service. It is the *benefit from the service,** which constitutes the groundwork of the claim." It is true that in this Story, J. does not specifically declare that the "cure" is actually a part of the ship's service; but surely that is an appropriate inference. It does not follow that, if the ship transfers the seaman to a foreign hospital, he may count the time there spent under § 1441(a) (2). *Cessante ratione legis, cessat ipsa lex*; but when the "cure," whether in a United States hospital, or on board ship, affects in the same way the interest concerned; i. e. fitness for citizenship—it appears to us that the seaman should be allowed to count it in the prescribed aggregate.

Order reversed; petition granted.

WATERMAN, Circuit Judge.

I dissent. I would affirm. Section 1441(a) (2) requires that the applicant for citizenship shall have "served honor-

---

* Italics ours.

ably or with good conduct for an aggregate period of five years on any vessel described in section 325(a) of the Nationality Act of 1940 * * *." We all agree that the crucial word here is "served." And we all agree that absent the three year period of hospitalization Cawley would lack seven months and twenty-six days of the requisite five years of service. However, the majority holds that this period of hospitalization may be included in determining the aggregate five year period of service. This conclusion is reached by first postulating that Cawley would have been entitled to maintenance and cure from the owners of the M/V Chant for a period longer than seven months and twenty-six days. Proceeding from this hypothesis my colleagues then assert that a seaman is in the service of his ship throughout the period that he may thereafter receive maintenance and cure.

I do not follow along in adopting the second step of this argument. Though it is true, of course, that a seaman has to have been "in the service of the ship" to entitle him to maintenance and cure from the shipowner, see, e. g., Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 726, 63 S.Ct. 930, 87 L.Ed. 1107, it is not also true that during a period of time when the seaman, away from shipboard, is receiving maintenance and cure he is "in the service of the ship." I believe my colleagues in reaching the result they have reached confused the employment situation necessary to entitle a seaman to maintenance and cure with the situation where the seaman, as here, is unemployed, and the maintenance and cure payments are continued because of the shipowner's undisputed continuing obligation to furnish maintenance and cure.[1] Indeed it is well recognized that the shipowner's obligation to furnish maintenance and cure may continue long

after the seaman's term of service has expired. See Calmar S.S. Corp. v. Taylor, 1938, 303 U.S. 525, 529–530, 58 S.Ct. 651, 82 L.Ed. 993. Thus, even if Cawley were entitled to maintenance and cure during his hospitalization this fact is irrelevant to whether he is eligible for citizenship under section 1441(a) (2), for it is clearly irrelevant in determining whether this period of hospitalization constitutes service on a vessel.

It is all very well to say that convalescence in a United States hospital exposes the convalescent to scrutiny as to his moral character equal to the opportunity for scrutiny which would have been presented had the convalescent remained on shipboard. Perhaps this is true. The statute, however, provides only that the applicant for citizenship shall have five years of service on a vessel. I think the statute needs no gloss upon it to make its intent clear, and I believe that we should read it as it stands.

---

[1] The case of Reed v. Canfield, C.C.Mass. 1832, 20 Fed.Cas. 426, No. 11,641, dealt primarily with the length of time the shipowner was obligated to continue payments for maintenance and cure. Nevertheless, the owner also contended that the right to maintenance and cure

did not exist if the seaman were injured when the ship was in its home port. The court summarily rejected this contention, and the language my colleagues quote has reference to this issue. It has no bearing on the issue presented here.