Edward J. SMITH, Libelant,

v.

ISTHMIAN LINES, INC., Respondent.

No. 28333.

United States District Court
N. D. California, S. D.

June 15, 1962.

5. 28 U.S.C. Rule 8(a).

Marvin Stender (of Martin J. Jarvis), San Francisco, Cal., for libelant.

Mark O. Kasanin, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for respondent.

WOLLENBERG, District Judge.

This is an action brought in Admiralty in which the libelant, a seaman, seeks maintenance and cure.

On January 4, 1961, libelant became employed by respondent, Isthmian Lines, Inc., aboard the S. S. Steel Scientist as a crew pantryman. On that day, about 3:00 p. m., libelant, while having coffee aboard ship, collapsed and fell from his chair on to the deck unconscious. Libelant was taken to the hospital and released to his home later that night. He did not return to the ship. He testified he did not feel well after that but did not visit a doctor until January 22, 1961. On March 8, libelant entered the U. S. Public Health Service Hospital where he remained until April 13, 1961. Libelant claims maintenance and cure at the rate of $8.00 per day for the 61 days from January 5 until March 7, 1961, during which time he did not report back to the ship nor do any work.

While a seaman has always been entitled to maintenance and cure for injuries and illness suffered in the service of the ship, wilful misconduct on his part which is the sole cause of his illness or injury has been recognized as a valid defense. See Benedict, Admiralty, Vol. I, sec. 83 (1940).

There is no evidence that libelant arrived on board ship in an intoxicated condition. However, he has a long history of alcoholism which the evidence shows was the proximate and sole cause of his "black out". U. S. Public Health Service Hospital records of April 14, 1961 show a long history of alcoholism, with hospitalizations on May 1, 1960 and June 20, 1959 for acute and chronic alcoholism. They further show: (1) libelant admitted consuming approximately one pint of ethonal per day for the past few years; and (2) a history of prior black outs. Smith admitted in Court to at least five prior black outs within the past two years, all apparently occurring when some effort was made to decrease the consumption of alcohol.

The hospital records further show libelant's excessive use of alcohol during the period for which he claims maintenance and cure, making it impossible for the doctors to properly diagnose and treat his condition.[1]

Hospital reports of April 14, 1961 and December 5, 1961 indicate the black outs are probably caused by alcoholic seizures.

Libelant was examined by the Overseas Medical Center in San Francisco on December 30, 1960, and was found to be in "good physical condition". He did, however, tell the doctor he had not been in the hospital or have any disease. The examination resulted in a finding of "no evidence of disease".

It is clear that a disease prior to the seaman's employment is within the concept of maintenance and cure if it manifests itself while the seaman is in the service of the ship. Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938); Neilson v. The Laura, (D.C.Cal.1872) Fed.Cas. No.10092.

A defense which a ship owner can assert to this claim is wilful misconduct by the seaman Warren v. United States, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503 (1951), which is the sole cause of the

---

1. Periodic out-patient visits to the hospital between January 22, 1961 and March 6, 1961 show libelant was continually drunk during this period. The U.S.P.H.S. Hospital report of March 6, 1961 states: "[Patient] continues to drink * * * I cannot determine his duty status on this basis and there is no point to future visits until and unless he can remain sober for a period of 2 w[ee]ks or more. *duty status undetermined*". On March 8, 1961, libelant became an in-patient.

illness or injury. Fuentes v. Panama Canal Co. (S.D.N.Y.1956) 146 F.Supp. 303. The traditional examples are venereal disease and intoxication. Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943).

In the typical case in which the court finds wilful misconduct on the part of a seaman a valid defense arises when the misconduct itself occurs while the seaman is in the employ of the ship. In the case of venereal disease, it is generally contracted while the seaman is on shore leave and manifests itself during the voyage or shortly thereafter.[2] In the case of intoxication, the seaman generally becomes so while he is on shore leave and injures himself either on shore or aboard ship while he is intoxicated.[3]

The courts in considering seamen to be their wards in cases involving maintenance and cure,[4] apply the defense narrowly. In The Quaker City (E.D. Pa.1931) 1 F.Supp. 840, the court refused to find an intoxicated seaman who was innocently hurt in a brawl guilty of wilful misconduct.[5] In Bentley v. Albatross S. S. Co. (3d Cir.1952) 203 F.2d 270, the court, although stating libelant's intoxication was not wilful misconduct, seemed actually to waive such misconduct if conditions aboard ship which constituted unseaworthiness were the proximate cause of injury.[6]

■ ■ The case at bar is not the typical case of isolated intoxication by a seaman. It involves a conscious mode of behavior taking place over a period of years. His behavior has become a way of life for the libelant, a way of life that has, at the present time, made libelant unfit for further duty at sea.[7] The court does not know the causes of libel-

ant's alcoholic condition; and however mitigating the causes may be if they were known, the continued use of alcohol over a long period of time without rehabilitation is, in the opinion of the court, wilful misconduct within the meaning of the Aguilar case.[8] The fact that libelant's wilful misconduct began years prior to his employment by respondent is of no significance here. Libelant's misconduct is not an isolated instance occurring years ago, but as indicated in the hospital records is a continuing process. In Trimm v. United Fruit Co. (S.D.N.Y. 1941) 41 F.Supp. 395, libelant, while working in a hot engine room, fell to the floor and sustained head injuries. The cause of the fall was a syphilitic condition acquired 30 years before, and long dormant. Judge Knox followed the rule that injuries caused by seaman's own vices prevent his recovery for maintenance and cure, but he went on to argue for a more liberal application, where, as in Trimm, libelant's misconduct was an isolated occurrence of years before when he was but a youth. Judge Knox stated "that promiscuous and unsanctioned sexual intercourse is a vice is undisputable. Among seamen however, such extramarital relationships are not only recognized, but condoned. And, upon the humanities and in this instance, upon equitable considerations, I personally think the plaintiff should have the benefit of maintenance and cure * * * For the youthful error of this plaintiff who * * * was a decent, respectable man, and one that efficiently performed his duties over many years, the law * * * should grant absolution". The case at bar presents no facts upon which the "humanities" and "equitable considera-

2. See Aguilar v. Standard Oil Co., supra, note 10, p. 731, 63 S.Ct. 930, 87 L.Ed. 1107; Zambrano v. Moore-McCormack Lines, Inc. (2d Cir. 1942) 131 F.2d 537.

3. See Aguilar v. Standard Oil Co., supra, note 11, p. 731, 63 S.Ct. 930, 87 L.Ed. 1107.

4. See Gilmore and Black, The Law of Admiralty, Sec. 6-6 (1957).

5. See also Fuentes v. Panama Canal Co., supra, where the Judge found that where

there was failure to advise libelant that excessive drinking might aggravate his mental illness his continued drinking did not constitute wilful misconduct.

6. Here libelant, while in a drunken stupor, slumped on an unguarded (and thus unseaworthy) hot radiator. Bentley v. Albatross S.S. Co., 203 F.2d p. 274, supra.

7. Consultation Report, U.S.P.H.S.Hosp. 12-5-61.

8. Aguilar v. Standard Oil Co., supra.

tion" can operate. As this wilful misconduct was the sole and proximate cause of libelant's illness, he is barred from recovery.

While a seaman who believes himself fit for duty and signs on without any fraudulent concealment is entitled to maintenance and cure, notwithstanding a previous condition of ill health, Ahmed v. United States, (2d Cir.1949) 177 F.2d 898, the record here indicates that, as libelant was hospitalized on two occasions for chronic and acute alcoholism and knew of his tendency to black out, he was quite aware of his condition and could not reasonably believe himself fit for duty. His failure to disclose these facts during his physical examination provides another ground for denying libelant's claim. Tawada v. United States, (9th Cir.1947) 162 F.2d 615.

For the reasons stated above, libelant's complaint is dismissed and judgment is hereby entered for respondent accordingly.

The foregoing judgment shall be considered the fulfillment of Admiralty Rule No. 46½, Title 28 U.S.C.A. and be Findings of Facts and Conclusions of Law.