Martin **BURKERT**, Appellant,

v.

**WEYERHAEUSER STEAMSHIP COMPANY**, a corporation, Appellee.

No. 19706.

United States Court of Appeals
Ninth Circuit.

Aug. 16, 1965.

2727

Lawrence Drasin, Daniel Fogel, Bodle & Fogel, Los Angeles, Cal., for appellant.

L. Robert Wood, Thomas H. Werdel, Jr., Lillick, Geary, McHose & Roethke, Los Angeles, Cal., for appellee.

Before HAMLEY, HAMLIN and BROWNING, Circuit Judges.

HAMLIN, Circuit Judge.

Martin Burkert, appellant herein, instituted the present action by filing a complaint in the United States District Court for the Southern District of California, Central Division, on February 19, 1963, wherein appellant sought maintenance and cure, wages to the end of the voyage, damages and attorney's fees. The district court's jurisdiction was invoked pursuant to 28 U.S.C. § 1333. Trial was held before the court, and, in an opinion filed June 11, 1964, the court held that the appellant was not entitled to recover in his action.[1] After making Findings of Fact and Conclusions of Law, the court entered a final decree ordering the libel dismissed on July 8, 1964. From this decree appellant appeals, invoking the jurisdiction of this court pursuant to 28 U.S.C. § 2107.

Because of our disposition of this appeal, only a limited statement of the facts is required. Appellant commenced his maritime career in 1934 as an apprentice seaman with the United States Navy. In 1938 he obtained a third mate's license, and after employment aboard merchant ships as an able seaman worked continuously as a mate from 1942 through 1945. During this period appellant's license was upgraded to second mate. In 1946 appellant was afflicted

1. Burkert v. Weyerhaeuser Steamship Co., 231 F.Supp. 381 (S.D.Cal.1964).

with a nervous disorder, and after a brief hospitalization, he resumed his occupation, obtaining his Master's License in 1948. In 1949 mental illness again manifested itself, and appellant was hospitalized for a period of approximately five months. Upon discharge, appellant worked ashore as a painter from 1950 to 1952, at which time he resumed his occupation as a licensed deck officer, working steadily as such until July of 1955 when mental illness again recurred and he was again hospitalized. For the following two years appellant was plagued with cycles of recurrent periods of mental illness followed by treatment in various institutions, the final period of treatment ending in July of 1957. At this time appellant returned to his occupation, working first on various vessels in port as a night relief officer. In October, 1958, appellant applied for renewal of his Master's License. At that time he was examined by Public Health Service medical personnel, who, after examining him and reviewing both his physical and mental medical history, concluded that appellant was competent. The Coast Guard thereupon renewed his Master's License, thus entitling him to be Master of a merchant vessel.

In 1959 he obtained employment with the Los Angeles Harbor Department as a deck hand on a ferry which operated between San Pedro and Terminal Island. He worked mainly at this occupation until September of 1962, although during that period he also served as Third Mate on the HAWAIIAN RANCHER on a voyage to Honolulu from May through July, 1960, and as Second Mate on the M. V. GEAR from December, 1960, through January, 1961. For approximately five years, from 1957 to 1962, he suffered no recurrence of any mental illness. In September, 1962, when a bridge was being constructed to replace the ferry on which he had been working, he registered with the Masters, Mates and Pilots organization for a job. In September, 1962, he bid for and obtained a job on the S.S. HORACE IRVINE, owned and operated by Weyerhaeuser Steamship Company, appellee herein, as a Third Mate relief officer on an intercoastal voyage. When appellant signed aboard, he was not asked to submit to a prehiring medical examination or interview, and no questions were asked of appellant regarding his physical and mental condition. The vessel proceeded north to San Francisco and then south through the Panama Canal and up the East Coast to Baltimore. During this period, appellant performed his duties satisfactorily and in a competent manner. On October 23, three days out of Baltimore, on the return trip to the West Coast, appellant became mentally ill and he was confined to his quarters. When the vessel arrived in Panama, appellant was taken ashore and hospitalized.

The district court held that, under the facts of his case, appellant was under a duty to disclose his history of prior mental illness to appellee when he signed aboard, and that his failure to do so relieved appellee of any liability in connection with the disability resulting from appellant's illness which occurred during the voyage.[2] We reverse and remand.

In reaching its decision below, the court framed what it thought to be the applicable standard in the following language:

"This court must at the outset determine whether libelant was under a duty to disclose a pre-existing illness which might—and in fact did— lead to disability, *even though he might at the time have considered himself fit for duty.*

"The United States Court of Appeals for the Ninth Circuit has answered this question in the affirmative in the case of Tawada v. United States, 162 F.2d 615 (1947) * * * * ." (Emphasis added.)[3]

This court's decision in Tawada does not support such a broad statement.

There, Tawada was a seaman who signed aboard the respondent's vessel as an engineer in September, 1944. On the day before Tawada signed aboard, he was given a "pre-sign-on" medical examination to determine his physical fitness for sea duty and for the purpose of determining whether or not he was afflicted with a contagious disease. As part of the medical examination, an X-ray of his chest was taken. It was the practice to give each seaman a certificate of fitness in the event that no disability was discovered by routine examination before the X-ray films were developed. Two days after the examination, Tawada was recalled by the Public Health Service for a further X-ray, and it was found that he was suffering from a moderately advanced pulmonary tuberculosis. Thereafter, Tawada brought suit for wages and maintenance and cure. Tawada denied having any knowledge that he was afflicted with tuberculosis prior to signing aboard. Testimony at the trial, however, showed that Tawada was afflicted with tuberculosis as early as June, 1944, more than two months prior to signing aboard. It was admitted that the X-rays taken in June, 1944, disclosed a tubercular condition, but Tawada denied that his condition was ever disclosed to him. This court agreed with the lower court's finding that Tawada was not telling the truth in this regard, and affirmed the lower court's finding that Tawada was suffering from a far advanced case of tuberculosis, of which he was aware at the time he signed aboard in September, 1944. The court held:

"We do not understand counsel for appellant to contend seriously that appellant is entitled to recover in the event the finding that Tawada was aware of and concealed his condition at the time he signed the shipping articles, can be sustained. The ship owner's liability for maintenance and care extends to seamen 'becoming ill or injured during the period of their service' (Aguilar v. Standard Oil Co., 318 U.S. 724, 730, 63 S.Ct. 930, 933, 87 L.Ed. 1107), but that liability does not extend to a seaman who, with knowledge that he is afflicted with a disabling disease, conceals that fact and holds himself out as fit." Id. at 617.

The decision in Tawada merely holds that a seaman who, knowing that he is afflicted with a disabling disease, conceals that fact and holds himself out as fit for duty, is not entitled to maintenance and cure. The decision, quite clearly, does not hold that a seaman who has a good faith belief that he is fit for duty must disclose a *pre-existing history* of disease concerning which no inquiry is made. The court was careful to distinguish such cases in the course of its decision:

"The trial court, considering all the circumstances of this case, was justified in finding that Tawada knew he was suffering from tuberculosis at the time he signed the shipping articles and failed to make disclosure of that fact. Such circumstances distinguish the instant case from the cases upon which appellant mainly relies.

"In the cases cited by appellant either a pre-existing disease was 'lighted up' through some injury on the ship; was incurred during service on the ship, or 'the seaman, without fraud or concealment, and believing himself able to perform his duty, enters upon the service'. Neilson v. The Laura (Note 3)." Id. at 617.

The principle underlying the Tawada decision is simply this: When a seaman signs aboard, he must have a good faith belief that he is reasonably fit for duty. A seaman having such a belief is entitled to maintenance and cure and is not precluded from relief for failing to voluntarily disclose any illness or disease, whether existing or pre-existing.[4] See

4. The instant case is to be distinguished from those cases involving situations where a shipowner requires a seaman to submit to a pre-hiring medical examina-

Ahmed v. United States, 177 F.2d 898 2nd Cir. 1949).[5] In Tawada, the seaman did in fact have a disabling disease, knew that he was so afflicted, and could not but have known that such affliction rendered him unfit for duty.[6] This knowledge, of course, negated any possible finding that he entertained the

tion or interview and during the course of such examination or interview, the seaman intentionally misrepresents material facts. Where a seaman is asked to disclose pertinent information during a pre-hiring medical examination or interview and intentionally conceals or misrepresents material facts, he is not entitled to an award of maintenance and cure. See, e.g., Rosenquist v. Isthmian S.S. Co., 205 F.2d 486 (2d Cir. 1953); Adams v. American Export Lines, 1964 A.M.C. 2659 (S.D.N.Y.); Atkins v. Crounse Corporation, 196 F.Supp. 904 (W.D.Ky.1961); Milton v. Pure Oil Co., 165 F.Supp. 635 (E.D.Va.1958); Zackey v. American Export Lines, 152 F.Supp. 772 (S.D.N.Y. 1957); Hazelton v. Luckenbach Steamship Line, 134 F.Supp. 525 (D.Mass. 1955); Weller v. United States, 106 F. Supp. 502 (N.D.Cal.1952).

5. A somewhat similar situation was before the court in Ahmed v. United States, 177 F.2d 898 (2d Cir. 1949). In that case, Ahmed became sick while on the voyage and in July, 1943, was transferred to the Marine Hospital in New Orleans where his condition was diagnosed as "tuberculosis of the lung moderately far advanced." In the hospital his condition improved and at the end of August his sputum was found to be negative. In December, 1943, he was discharged at his own request against medical advice; he was cautioned not to work for several months and then to do only light work for some time. About a week after being discharged Ahmed sought employment as an oiler on a ship operated by Spencer Kellogg Company. He received the routine physical examination and was passed as good for duty. The voyage which he signed on ended January 19, 1944. Between that date and April 18, 1944, he was unemployed because he found no work. On the latter date he signed on as an oiler on the S.S. SAMUEL ASHE after a physical examination in which he was again found fit for duty. In neither examination did he volunteer information that he had previously been treated for tuberculosis and advised not to work for several months. At the trial he testified and the court found that during the period of approximately four months between his discharge from the New Orleans hospital and his signing on for the voyage of the SAMUEL ASHE, he felt in good health and he believed that he was well enough to perform the duties of an oiler on ships. During the voyage of the SAMUEL ASHE, Ahmed became ill and had to undergo treatment for advanced tuberculosis. The district court rendered a judgment awarding Ahmed maintenance and cure, and the United States appealed. The court stated:

"The appellant urges that a seaman who is sick and holds himself out as fit for duty cannot recover maintenance and cure. The case relied upon for this proposition, Tawada v. United States, 9 Cir., 162 F.2d 615, does not support so broad a contention. There it was held that a seaman who, knowing that he was afflicted with a disabling disease, concealed the fact and held himself out as fit, was not entitled to maintenance. Here the court found that Ahmed believed himself in good health. The appellant argues that Ahmed should have called his quiescent tubercular condition to the attention of the physician who examined him as a prospective member of the crew. No authority has been cited which supports this argument. On the contrary, long ago it was held that a seaman who believes himself fit for duty and signs on without any fraudulent concealment, is entitled to maintenance and cure, notwithstanding a previous condition of ill health. Neilson v. The Laura, 17 Fed.Cas. page 1305, No. 10,092." Id. at 899.

The court affirmed the judgment of the district court, stating in part:

"He felt in good health; the examining doctor passed him as fit for duty, and he accepted the doctor's report at face value. We do not think that he was required to do more." Id. at 900.

We do not consider the ground upon which the court below distinguished the decision in Ahmed as being sound. See note 7, infra.

6. Tawada v. United States, 162 F.2d 615 (9th Cir. 1947). See also Smith v. Isthmian Lines, Inc., 205 F.Supp. 954 (N.D. Cal.1962); Milton v. Pure Oil Co., 165 F. Supp. 635 (E.D.Va.1958); Zackey v. American Export Lines, 152 F.Supp. 772 (S.D.N.Y.1957); Fardy v. Trawler Comet, 134 F.Supp. 528 (D.Mass.1955); Saar v. Sun Oil Co., 124 F.Supp. 684 (E.D. Penn.1954); Burns v. United States, 62 F.Supp. 603 (E.D.Penn.1945).

requisite good faith belief that he was fit for duty at the time he signed aboard, and compelled a finding that the seaman knowingly concealed the fact that he was unfit for duty.

It is clear from the portion of the district court's opinion quoted above that the court applied an erroneous standard in this case, for it did not consider appellant's belief that he was fit for duty relevant. The proper standard to be applied in cases such as this is whether the seaman, in good faith believed himself fit for duty when he signed aboard for duty. The crucial fact issue before the court was whether or not there existed reasonable grounds to support appellant's belief that he was fit for duty. The absence of such reasonable grounds would support a finding that appellant did not believe, in good faith, that he was fit for duty, and conversely, the presence of such reasonable grounds would require a finding that the appellant did entertain the requisite good faith belief in his fitness for duty.[7] The defense raised by appellee in an affirmative defense. It was incumbent, therefore, for appellee to establish by substantial evidence that there was lacking such reasonable grounds to support appellant's belief that appellant could not but have known that he was unfit for duty. The district court found as fact that appellant was suffering from a disabling disease at the time he signed aboard, and that he was aware of his "history" of mental illness and understood its possible disabling effect. Because of the disposition we make of this case, we assume for the present that that finding is supported by the record. But that finding does not negate the possibil-

ity that appellant entertained the requisite good faith belief that he was fit for duty. The deficiency in the court's findings in this regard is due primarily to the fact that the court applied an erroneous standard of law. It is necessary, therefore, that the case be remanded for a new trial on this issue.

The district court found that "any medical attention obtained by or received by libelant subsequent to his discharge from Gorgas Hospital [located in the Panama Canal Zone] was diagnostic or supportive in nature, and did not contribute to an improvement or cure of his mental condition." Appellant remained at the Gorgas Hospital in the Panama Canal Zone from October 27, 1962, to November 13, 1962. The attending physician's narrative summary of appellant's treatment and diagnosis while at the Gorgas Hospital was introduced into evidence by appellee. The attending physician diagnosed appellant's condition as an "acute brain syndrome associated with alcohol intoxication and acute hallucinosis." On release his condition was listed as "recovered", but the report also stated that his impairment was "mild," and that appellant "should have psychiatric evaluation in [the] States before returning to work." When appellant arrived in the United States he went to the United States Public Health Service, where he received treatment until the latter part of January, 1963. Thereafter, appellant voluntarily enrolled at the Camarillo State Hospital, and was an inpatient there from February, 1963, to March, 1963. Appellant then made arrangements to see a private psychiatrist, Dr. Robert Richards, whom he visited a

7. In the instant case, appellant was not asked at the trial whether or not he had a good faith belief as to his fitness for duty at the time he signed aboard the HORACE IRVINE. However, the facts in the record of his having been found competent by the Public Health Service in 1958, the renewal by the Coast Guard of his Master's License at that time, and his subsequent work in various capacities for a period of approximately four years without having any mental or physical problems, would support such a finding. See, e.g., Couts v. Erickson, 241 F.2d 499 (5th Cir. 1957); Ahmed v. United States, 177 F.2d 898 (2d Cir. 1947); Saar v. Sun Oil Co., 124 F.Supp. 684 (E.D.Penn. 1954); Ward v. American President Lines, 95 F.Supp. 609 (N.D.Cal.1951); Gray v. Bernuth, Lembcke Co., Inc., 89 F.Supp. 156 (E.D.Penn.1950).

832

total of 19 times. Appellant also received treatment at the Los Angeles State Mental Hygiene Clinic, and was still receiving treatment there at the time of his trial. The only testimony regarding appellant's mental condition was the testimony of Dr. Richards, produced on behalf of appellant. After examining that testimony, we believe that the court's finding above is clearly erroneous. That testimony reveals that the treatment appellant received subsequent to his release from the Gorgas Hospital did contribute to appellant's cure. On remand, the issue of when maximum cure was attained will, therefore, have to be retried.

The district court is directed to award reasonable attorney's fees incurred by appellant on this appeal in an amount that the court deems appropriate.

Reversed and remanded.