**LIPSCOMB v. GROVES et al. (two cases).**

**Nos. 10115, 10116.**

United States Court of Appeals
Third Circuit.

Argued Nov. 13, 1950.

Decided Feb. 7, 1951.

Stark & Goldstein, Philadelphia, Pa., for appellant.

Krusen, Evans & Shaw, Philadelphia, Pa., for appellees.

Before MARIS, McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

These appeals involve a seaman's claims under the Jones Act [1] for personal injuries and for maintenance and cure. The negligence and unseaworthiness phase of the action was submitted to a jury and resulted in favor of the defendants. Plaintiff below appeals from that judgment in No. 10,115. In No. 10,116, the Trial Judge originally awarded maintenance, cure and wages in the sum of $1,968.75 to the seaman. D.C., 83 F.Supp. 402. On rehearing,* the award for wages was eliminated and judgment entered for maintenance and cure in the sum of $1,120. From that judgment the defendants appeal. There is no cross appeal on behalf of Lipscomb from the decision of the court as to wages.

The actionable facts were controverted and for our purposes need not be stated at any great length. Appellant, twenty-two years old at the time, was a member of the crew of appellees' S.S. "Alexander S. Clay" serving in the capacity of wiper. On June 25 or 26, 1947, while the ship was in the harbor at Rouen, France, he, and his brother who was aboard in like capacity, were emptying some drums of oil from the boat deck to the deck below. Just what took place and whether Lipscomb was in an accident as he claimed is disputed. There is no doubt, however, that by the following night his physical condition was such that he had to be removed from the ship to a Rouen hospital. There he was found to have an intestinal obstruction and an emergency operation was performed on him. He urged at the trial below that he had sustained an accident on shipboard which had so aggravated his preexisting physical condition as to require that operation. He also contended that he later developed a ventral hernia as a result of the Rouen operation which he states has prevented him from resuming his occupation.

Appellant's spleen had been removed as a child. In 1945, at Jefferson Hospital, Philadelphia, Pa., he had undergone surgery for the removal of adhesions which had caused an obstruction of the small intestine. This was the same sort of disorder for which he was operated on in Rouen. About five months before shipping on the S.S. "Alexander S. Clay" he had again been a patient in Jefferson Hospital. His trouble at that time was varicosities of the entire wall of his esophagus in its lower third. He entered the hospital February 6, 1947. He was discharged February 8, 1947 and was supposed to return at a later date "for conservative treatment". He did not return. Prior to that experience he had received other medical treatment elsewhere.

Appellant said that during his preemployment examination by appellees' doctor, he had told the doctor that he had "had the operations on account he asked me about the scars". Asked if he said anything to the doctor about the second treatment in Jefferson Hospital, he replied. "No, on account of he didn't ask me." Lipscomb said that he did not think that information important because he was not kept "in the hospital". At the time he was examined he had the visible scars of the two operations.

### Negligence and Unseaworthiness.

On the negligence action, appellant urges that the Trial Judge erred both in his general charge and on affirmance of defendants' point with reference to appellant's duty to disclose his physical condition. In connection with the preemployment medical examination of appellant by appellees' physician, the court charged the jury: "You have heard about the question of the examination before the young man went on this last trip on the S.S. "Alexander S. Clay". He was examined by this doctor who took the stand and told you about it. Now, the law says the sailor's duty is to disclose whatever he as an ordinarily prudent person should have known to have been material to the risk." In form and substance this language bore close resemblance to Point 2 of

1. 38 Stat. 1185, 41 Stat. 1007, 46 U.S.C.A. § 688.

* No opinion on rehearing for publication.

appellee's requests. Those requests were presented to the court prior to the charge. The portion of the general charge quoted apparently derived from the request; certainly the jury could not avoid connecting the two. Point 2, as charged, was as follows: " 'Under the Maritime law the employer must pay to the seaman the fair value of the board and lodging which the seaman would have received on board the vessel. The shipowner assumes this burden if the seaman becomes ill or is disabled for any reason during the term of his employment. If disability arises during employment, the employer must furnish the seaman with the money value of this maintenance and medical care and attention for a reasonable time to enable the seaman to reach the maximum state of recovery which his condition permits. Because of the obligation upon the shipowner, a seaman seeking · employment is bound to disclose'—I have read that to you —'to his prospective employer whatever facts about his physical condition he knows or as a reasonably prudent person should know may be material to the risk which the shipowner assumes in employing him.' The discussion I will dispense with."

Appellant took no exception to the quoted language from the general charge. He did except to the charging of Defense Point No. 2. That exception adequately covers the principle of law involved.

Appellees' request, as affirmed by the court and as incorporated into the general charge, was substantial error. In this count, based on negligence and unseaworthiness, appellees used a maintenance and cure theory as the test of whether the seaman had a cause of action. In so doing they presented the proposition which was charged—that without fault, the shipowners had the obligation of maintenance and cure arising from the disability of the seaman, and since this was so, the seaman had the duty "* * * to disclose whatever he as an ordinarily prudent person should have known to have been material to the risk." The risk referred to obviously was the responsibilty of appellees to furnish Lipscomb with the money value of his maintenance and cure if he became disabled during his employment. The maintenance and cure rule given the jury as the guide for its decision, irrespective of whether or not it correctly outlined the particular maintenance and cure law,[2] had no connection with this action. Since the "risk" mentioned in the charge had nothing to do with the law upon which this count of the complaint was both based and tried, the duty attributed to Lipscomb, asserted to arise from that "risk", did not have any proper place in the charge. In this jury case Lipscomb was not seeking recovery from the shipowners without fault. The sole foundation of this claim was the alleged negligence of appellees and the unseaworthiness of their vessel. Lipscomb had to prove at least one of those contentions. If he did, the law made appellees liable to him. That liability was unrelated to the responsibility to Lipscomb assumed by the ship without fault under the doctrine of maintenance and cure.

Nor can appellees' request be justified upon the proposition that one of the ten grounds of their alleged negligence, as set out in the complaint, was that they had failed "to provide proper and adequate

2. Appellees refer to Lindquist v. Dilkes, 3 Cir., 127 F.2d 21, 24, suggesting the test presented to the jury. It is not clear from the Lindquist opinion that this is the rule of that case. The pertinent discussion therefrom on this point is as follows: "If this analogy is sound, the sailor's duty is to disclose whatever he as an ordinarily prudent person should have known is material to the risk. It might be argued that the withholding of any medical fact either known or reasonably to be known is fatal. This on the theory that its significance is left to the judgment of the insurance company or the employer. *The cases in our parallel field of the law do not go so far. We think correctly because after all the employer or the insurer can quite easily ascertain the necessary information by proper inquiry.*" (Emphasis supplied.)

The emphasized language would seem to have been intended as a qualification of the sought for rule.

On another point not here pertinent, the Lindquist opinion has been overruled. See Jordine v. Walling, 3 Cir., 1950, 185 F.2d 662.

44

medical care and attention and maintenance for the alleviation and cure of plaintiff's injuries". Appellees say they had no duty to furnish Lipscomb with "care" or medical attention because he concealed his physical condition. The question of concealment is discussed in detail, infra, under "Maintenance and Cure." Suffice to say here that the request, as given the trial judge and charged by him, was not confined to the only item of Lipscomb's damage which could be possibly construed as flowing from alleged negligent treatment or lack of medical attention. The request was directed generally against his recovery of any damages whatsoever. Those damages, according to Lipscomb, consisted primarily of aggravation of his preexisting condition which, he said, caused the Rouen operation. The period of alleged negligent treatment or lack of treatment did not even commence until after the operation and revolves around the development of the hernia at the site of the operative wound.

■ The next point pressed as error below, concerns the refusal to strike out an answer to a hypothetical question put by appellees to a Dr. Parker, one of their medical witnesses. On recross examination of this witness it developed that the doctor in answering had relied on vitally important facts outside the scope of those contained in the hypothetical question. For that reason the answer should have been stricken.[3]

■ Error is also ascribed to the denial of appellant's motion to suppress the deposition of Dr. Fresnais. That deposition was taken by appellees in France, purportedly under Rule 31 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Rule 31 provides the method for taking the depositions of witnesses by means of written interrogatories. In accordance with it direct, cross and redirect interrogatories were properly served. After service of the redirect interrogatories appellant had three days in which to serve recross interrogatories and did so within time. Prior to the expiration of the three

day period and of service of the recross interrogatories appellees had transmitted the commission for the deposition and the direct, cross and redirect interrogatories to the American Consul at LeHavre. Those three sets of interrogatories were answered and returned in time for the trial. Appellant's recross interrogatories were never answered. At the trial, the direct and cross interrogatories and their respective answers were received in evidence. Appellees withdrew their offer to place in evidence the redirect interrogatories and answers. Appellant moved to suppress the deposition because it did not include his recross interrogatories and answers. He alleged that he had been harmed by being deprived of material evidence. The court denied the motion.

We cannot say whether the evidence which appellant sought by his cross interrogatories would have been valuable to his case as asserted by him, but, admittedly, he had complied with Rule 31. Consequently, he had every right under that rule to have his recross interrogatories submitted to the witness, answered, and to have those interrogatories with answers in court at the trial available to be offered in evidence. It is undoubtedly true, as appellees state, that there had been difficulty and confusion regarding the identity of the person whose deposition was to be taken and that considerable time had been consumed. There is, however, no indication that the trial could not have been postponed until the deposition had been taken in accordance with the provisions of Rule 31. The deposition was not under the control of the appellees. First Nat. Bank of Grand Haven v. Forest, C.C.N.D. Iowa E.D., 44 F. 246. As we said in Canister Co. v. Leahy, 182 F.2d 510, 514, "The Rules [the Federal Rules of Civil Procedure] are rules of procedure. They must be adhered to." The deposition was incomplete and improper. Nor was the situation cured by the circumstance that appellees withdrew their offer to put into evidence their redirect interrogatories and answers. Appellant, irrespective of that,

3. As to proper hypothetical questions, see Wigmore on Evidence, Vol. 2, Section 672 et seq.

was entitled to the affirmative benefit of his own recross interrogatories. See Winthrop v. Union Insurance Co., C.C.D.Pa., Fed.Cas.No. 17901. This had been denied him. As a result, the deposition was contrary both to the letter and spirit of Rule 31. It was error to allow it into evidence.

We have examined appellant's remaining points and find them without substance.

### Maintenance and Cure.

Appellants' main point for the reversal of the award for maintenance and cure is based upon the premise that Lipscomb wilfully concealed from their doctor facts bearing upon his physical condition which, if revealed, would have resulted in his rejection as an employee. Specifically, they refer to his Jefferson Hospital treatment in February, 1947, his history of vomiting blood and to the fact that one of his two prior operations may have technically been for obstruction of the small intestine rather than for adhesions causing the obstruction. Therefore, say appellants, he is not entitled to maintenance and cure.

It is true that the issue is before us de novo, but here the District Judge saw and heard Lipscomb and had the fullest opportunity to pass upon his credibility. He found that Lipscomb's " * * disability was sustained while in the service of the vessel and not by reason of his own vice or misconduct." [83 F.Supp. 404.] From our independent examination of the record there is ample evidence to support that finding. While it may not have been intended, of itself, to directly include and affirmatively dispose of the charges of wilful concealment, there is no finding or inference to be drawn from any of the findings made that Lipscomb concealed material facts about his physical condition. From the findings and the award the conclusion necessarily follows that the Trial Court did not believe Lipscomb to have been guilty of the concealment charged.

On cross examination, Lipscomb said that his reasons for not advising the doctor about having been a Jefferson Hospital patient for the second time were because the doctor did not ask him and he had not thought the incident important as he had not been kept in the hospital. It was on the occasion of that hospitalization that he had complained of vomiting blood eight days previously. That second Jefferson Hospital treatment was for, what is in non-technical language, enlargement of the vein or veins in the esophagus. Lipscomb has made no claim that his esophagus was in any way affected by his accident aboard appellants' ship. It is apparent, therefore, from Lipscomb's testimony that not only did it furnish sufficient justification for the Trial Court refusing to hold that he had deliberately concealed the treatment of his esophagus but, actually, it had no connection with his alleged damages. Maintenance and cure may be denied a seaman who concealed preexisting illness or injury if that concealment amounted to culpable misconduct. See discussion in Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107. The rule, however, is not pertinent to the issue before us where, at the very least, the alleged concealment bore no relation to the injuries for which recovery was sought.

Regarding the damage which Lipscomb does say he sustained, there is no merit to appellants' contention that he did not give correct information concerning the operation he underwent following the removal of his spleen. On direct examination he stated that he told the examining physician the operation had been for "obstructions". On cross examination he was not sure whether he informed the doctor it had been for "adhesions or obstructions". The information furnished was substantially accurate. It was sufficient to show there was no attempt at concealment, for the medical evidence leaves no doubt but that it was the adhesions following the spleen operation which caused the obstruction to the intestine. It was that condition which Lipscomb alleged had been aggravated.

Appellants' remaining two points are considered together. It is argued that Lipscomb is not entitled to maintenance beyond August 13, 1947. That is the date, immediately following Lipscomb's

return to this country from Rouen, when he was seen by a physician on behalf of the United States Public Health Service. The Trial Court awarded Lipscomb maintenance up to trial time "* * * without prejudice to any later suit by plaintiff to recover such further maintenance to which he may be entitled, subsequent to the date of the conclusion of the trial, namely, February 1, 1949." We are, of course, dealing solely with that award.

Findings of fact Nos. 13 and 14 read:

"13. In the summer of 1948, plaintiff's weakened abdominal wall had become the site of a ventral hernia. This was a result of and complication from the third operation.

"14. Since June 26, 1947, up to the time of trial, plaintiff has been unable to resume his occupation as wiper and is capable of engaging in sedentary work only. During this period, improvement in plaintiff's condition from nursing, care, and medical treatment could reasonably have been expected."

From the testimony, particularly that of Lipscomb and Dr. Chaess, it could be concluded that Lipscomb has a ventral hernia as a result of the Rouen operation and that his condition could be aided by further treatment, especially by being fitted with a proper abdominal support [4] and by being given sound medical advice. It should also be noted that a repair operation was not entirely ruled out by Drs. Russell and Chaess though discouraged by the latter. We agree that the doctrine of maintenance and cure could not be invoked to hold appellants for payments to Lipscomb if, under the facts,

his condition amounted to permanent disability [5] but the record reveals no meritorious reason for disturbing the conclusions of the Trial Court that during the period of the award, "* * * improvement in plaintiff's condition from nursing, care, and medical treatment could reasonably have been expected."

In No. 10,115, the action for negligence and unseaworthiness, the judgment of the lower court will be reversed and the case remanded for a new trial.

In No. 10,116, the judgment in favor of Lipscomb for maintenance and cure will be affirmed.

4. Dr. Murphy, who examined Lipscomb on August 13, 1947, for the United States Public Health Service, testified that at that time Lipscomb was not wearing any sort of a surgical belt that he recalled. Refreshing himself from his notes, the doctor said: "Well, he must have been wearing it. You see, I examined him here without anything on. I examined him in the room across the way there, so he was probably stripped when I saw him, but I must have seen the belt back on—'Has a very good abdominal belt.'" Lipscomb testified that during that pe-

riod he was wearing a bandage which was "* * * a wrapping around me, and the medicine, that was to heal the scar, and this wrapping was supposed to hold the stomach." The support itself was in evidence (P. 15). Dr. Chaess examined it and stated that it was not the type which would be prescribed to support a ventral hernia.

5. Cf. Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850; Cortes v. Baltimore Insular Line, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368.