**ROSENQUIST v. ISTHMIAN S. S. CO.**

No. 247, Docket 22525.

United States Court of Appeals
Second Circuit.

Argued May 5, 1953.

Decided June 25, 1953.

Kirlin, Campbell & Keating, New York City, for appellant; Walter X. Connor and Vernon Sims Jones, New York City, of counsel.

Sterling & Schwartz, New York City, for appellee; Marvin Schwartz and Betty H. Olchin, New York City, of counsel.

Before SWAN, Chief Judge, and L. HAND and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Chief Judge.

This is an action brought by a seaman against the owner of the vessel on which he was employed, to recover damages for personal injuries (hernia sustained while at work aboard the ship), and also to recover maintenance and cure. The case was tried to a jury which returned a verdict for the plaintiff on both causes of action. From the resulting judgment the defendant has appealed.

With respect to the cause of action based on negligence the appellant's primary contention is that the court erred in not granting the motion for a directed verdict. The plaintiff's hernia was suffered when he and another seaman named Violente were moving a folded tarpaulin from a passageway in the aft peak house. The folded tarpaulin lay on the floor of the passageway and made a rectangular bundle about 5 feet long, 4 feet wide and 2 feet thick; it

weighed about 200 pounds. Not having lashings about it, it was flexible and consequently less easily handled than if it had been made rigid by lashings. The chief mate gave orders that the tarpaulin should be moved to the deck. This required moving it some 6 to 8 feet along the passageway and over the coaming, a little less than 2 feet high, at the exit to the deck. The plaintiff was the only witness who testified as to the accident which caused his hernia. He testified that he and Violente turned the tarpaulin bundle up on edge, pulled it along the floor of the passageway, and as they got near the coaming "we put our hands under it and lifted it up to the height of our waist, and we were facing each other, and the other seaman I guess he was turned around, he was too close to the coaming, see, and it came loose from his grip and the whole tarpaulin dropped, and I was lifting and holding it with my hand." It was then that the plaintiff felt a very sharp pain, a lump "about the size of a golf ball" came out on his abdomen, and he became nauseated. He did no more heavy work during the remainder of the voyage. When the vessel reached Batavia he was examined by a doctor and was told he had a hernia. Although the chief mate gave the plaintiff and Violente orders to move the tarpaulin, he gave them no orders as to how they should do it. Lashings were available if they had wished to get them. The mate had declined, though requested by the plaintiff, to assign an additional seaman to assist in the work. The case was submitted to the jury upon two possible bases for the claim of negligence.[1] The first was whether the mate was negligent in having assigned only two men to do the job. The second was whether Violente was negligent in dropping his end of the tarpaulin bundle. The jury returned a general verdict so that it is impossible to know on which basis they found negligence. The appellant contends that on neither basis was the evidence sufficient.

■ As to the first ground of alleged negligence—failure of the mate to assign more than two men to the work—we think a jury question was presented. The plaintiff testified that he requested the mate to assign more men and the mate denied that such request was made. Concededly the mate did not order the plaintiff or Violente to pick up and carry the tarpaulin, and testified that he thought there was no occasion for them to do so. But he did not order them not to move it in that manner; and on cross-examination he said that if it was to be picked up and carried it would "be better practice to have more than two men."[2] This admission was enough to

1. The court charged: "In this case there are two possible bases for the claim of negligence on the part of the defendant, acting through its officers or seamen. The first possible basis is the orders given by the Chief Mate with respect to the moving of the tarpaulin. The question is whether the Chief Mate was negligent in having only two men assigned to that job. In other words, was the Chief Mate exercising ordinary care in having two men move the tarpaulin, or in the exercise of ordinary care should he have assigned more than two men to do this job. If you find that the Mate did not exercise ordinary care, then the (462) defendant was negligent on this basis. But if you find that he did exercise ordinary care then the defendant was not negligent on this basis.

"The second possible basis for defendant's negligence is the alleged dropping of an end of the tarpaulin by the seaman Violente. You should consider, especially in this connection, just how the tarpaulin was being moved and whether the way that Violente handled the tarpaulin created a risk of harm to the plaintiff which a reasonable and prudent person should have anticipated and guarded against in similar circumstances. If you find that the way Violente handled the tarpaulin created such a risk, then the defendant was negligent on this basis. But if you find that it did not create such a risk, the defendant was not negligent.

"If you do not find that the defendant was negligent on either basis, then your verdict must be for the defendant on the first cause of action."

2. "Q. Let me ask you this: Would you deem it advisable to have two men attempt to pick up a weight like this and carry it in the condition it was in the passageway, or would it be better practice to have more than two men? I am talking about picking it up. A. In the condition that it was in the passageway you say?

"Q. Yes. A. More than two men?

send to the jury the issue of negligence on the part of the mate.

On the other hand, we cannot think that the mere fact that Violente let slip his end of the tarpaulin bundle was evidence of negligence by him. To let his end drop to the floor, a distance of not more than three feet, was most unlikely to cause any injury to the plaintiff at the other end of the bundle. Even if it be assumed that the sudden drop added to the dead weight by imparting to the plaintiff's end some of the energy of the falling end, the likelihood that this would put such a strain on the plaintiff as to result in injury seems to us too remote to require an ordinary seaman to anticipate it. The plaintiff testified that he could handle a hundred pounds without difficulty. While it may well be true that the plaintiff had a propensity to hernia because of bayonet wounds in his abdomen suffered during war service at Guam, there is no suggestion that Violente knew of such wounds. This is not a case permitting application of the *res ipsa loquitur* doctrine. The situation is utterly different from that in Johnson v. United States, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468, where a heavy block was dropped upon the deck where men were working. Any one who lets such a block fall must necessarily foresee the risk of injury. Negligence may be measured as a product of the gravity of the injury, if it occurs, multiplied by the factor of its probability.[3] The chance that any serious danger would happen from dropping Violente's end of the tarpaulin was substantially zero. Hence we cannot think that Violente was

charged with any duty toward plaintiff to guard against letting slip his grip on the tarpaulin. Accordingly we hold that the court erred in submitting to the jury the issue of negligence by Violente. This was sufficiently called to the court's attention by counsel's statement that he understood that his motion for a directed verdict preserves his position with regard to the alleged negligence, "namely, that the mere fact that Violente dropped the canvas does not give anyone a right to infer that the dropping was negligence, or that his conduct was in any way negligent * * *." Judgment on the first cause of action must be reversed.

As to the second cause of action —for maintenance—little discussion is necessary. The amount was agreed upon in the sum of $324, if anything was recoverable, but the defendant contended that the plaintiff was barred from any recovery by reason of having broken his warranty of fitness for sea service because he had a physical disability—propensity to hernia— which incapacitated him from performing heavy manual labor. He was given a physical examination by the defendant's doctor before he was accepted as a member of the crew. As this court held in Ahmed v. United States, 2 Cir., 177 F.2d 898, such an examination should be proof of a seaman's condition unless he conceals something which he knows to be relevant or which he can reasonably be charged with so knowing. The issue of such concealment was left to the jury under instructions[4] to which no exceptions were taken.

---

"Q. Yes. A. To pick it up and to carry it?

"Q. The answer is yes? You think it would be better to have more than two men, is that right? A. Yes, sir. Excuse me."

3. See United States v. Carroll Towing Co., 2 Cir., 159 F.2d 169, 173; In re Spencer Kellogg & Sons, 2 Cir., 52 F.2d 129, 132, reversed on other grounds, sub.nom. Spencer Kellogg Co. v. Hicks, 285 U.S. 502, 52 S.Ct. 450, 76 L.Ed. 903; The Silver Palm, D.C.N.D.Cal., 13 F.Supp. 212, 215; The John Carroll, 2 Cir., 275 F. 302, 306 ("The care to be exercised

must be in proportion to the danger to be avoided").

4. "On the second cause of action, the plaintiff has the burden of proof to establish that he incurred a disability while he was in the service of the vessel, and the defendant has the burden to establish that the plaintiff's disability was, to a substantial extent, the result of a prior abnormal condition, and that the plaintiff knowingly concealed it from the defendant.

* * * * *

If you should find that the plaintiff became disabled while in the service of the vessel, then you must permit recovery for

490

Without reciting the evidence concerning the plaintiff's prior condition and his knowledge of it, it will suffice to say that the evidence was sufficiently ambiguous to present jury questions.

On the second cause of action the judgment is affirmed; on the first cause of action the judgment is reversed and the cause remanded.

---

maintenance, unless you find that his disability resulted to a substantial extent from a prior abnormal condition and that the plaintiff knowingly concealed that condition from the defendant."