**Joe DRAGICH and Van Camp Sea Food Company, Inc., Appellants,**

**v.**

**Nikola STRIKA, Appellee.**

**No. 17500.**

United States Court of Appeals
Ninth Circuit.
Sept. 26, 1962.

[redacted]

**162**

Karmelich, Felando & Mepham, and John J. Karmelich, San Pedro, Cal., for appellant.

Margolis & McTernan, and David B. Finkel, Los Angeles, Cal., for appellee.

Before STEPHENS, MERRILL, and DUNIWAY, Circuit Judges.

STEPHENS, Circuit Judge.

This appeal is from a judgment of the United States District Court for the Southern District of California sitting in Admiralty, in which the Libelant, Strika, was awarded wages, maintenance and cure from Appellants Dragich and Van Camp Sea Food Company. Appellants owned and operated the commercial fishing vessel, U. S. Liberator, upon which the Libelant had been employed. The appellants seek reversal on their claim that the evidence does not support the judgment.

As a result of pre-trial proceedings and other stipulations between the parties, only two issues of fact remained to be decided by the trial court. (1) Whether or not the Libelant fell ill while in the service of the vessel and left the vessel on account of such illness. (2) Whether or not the Libelant was discharged for cause. The second issue was raised by the appellants as a defense to Libelant's allegation that he left the service of the vessel on account of his illness. It was stipulated that if the court held Libelant was entitled to recover, the amount of the recovery would be $8.00 per day for maintenance and cure, and $3,831.78 for wages. The trial court found in Libelant's favor on the issues thus presented, and awarded 180 days maintenance and cure at the above rate, the stipulated sum for wages, plus interest and costs. The appellants are here contending that findings in favor of the Libelant are not supported by the evidence and that the judgment should therefore be reversed.

The facts are substantially as follows: Libelant Strika, 49, had been a commercial fisherman for some 30 years. He was a big man, a heavy man who did not have the quick reactions of a young man. In September of 1959 he was hired by appellants as a crewman aboard the tuna fishing boat, the U. S. Liberator, after having completed nearly two years aboard another boat, the Western Star. At the time Libelant entered the service of appellants' boat, he believed himself fit for duty as did appellant Dragich, who had known Libelant as a fisherman for approximately five years.

During his first voyage aboard appellants' boat Libelant carried out the usual

duties of a tuna fisherman, and he was given no reason to believe that the quality of his work did not meet with appellants' approval. In fact, after the first voyage Libelant entered into a contract of employment with appellants for the entire 1960 tuna fishing season, lasting roughly from October of 1959 through June of 1960.

On his second trip to sea with the appellants Libelant continued to do the same work he had done during the first voyage. But one third of the way through the second trip, on two successive days, Libelant was overcome by a series of fainting spells. He lost his color and his appearance became glassy. One crewman described him as looking "one step from death". His physical movements slowed noticeably and he had substantial difficulty in getting around.

Subsequent to the fainting spells, Libelant's ability to perform his usual share of the work load was markedly impaired, and he complained of feeling weak and dizzy. Unable to resume his old duties, he was given only the lightest physical work during the remainder of the voyage. This naturally caused some dissatisfaction among the other crewmen, who are paid by receiving a proportionate share of the proceeds of the sale of the catch. Thus it was at the end of the second voyage that appellant Dragich received a paper signed by the other crewmen requesting that Libelant Strika be relieved of his duties aboard the U. S. Liberator.

When the vessel reached port, appellant Dragich told Libelant that he could no longer have him on the boat, that he was a sick man and should see a doctor. Not wanting to lose his job, Libelant then obtained a fit for duty slip from the United States Public Health Service (for convenience later referred to as USPHS) by concealing his fainting spells from the doctor, who made only a cursory examination. He returned with the slip to appellant Dragich who again refused to let him continue fishing, and again advised him to see a doctor. Libelant then

submitted to a thorough and lengthy examination by the USPHS in which it was finally determined that he was suffering from Parkinson's Disease, a disease which rendered him permanently unfit for duty as a tuna fisherman. Libelant thereupon brought this action.

On these facts the trial court found that the Libelant did fall ill while in the service of appellants' vessel and was therefore entitled to wages, maintenance and cure. We have carefully examined both the testimony and the documents presented during the trial, and we do not find that this determination by the trial court was clearly erroneous.

■■ There is of course no dispute with the general rule that a seaman who falls ill while in the service of his vessel is entitled to wages, maintenance and cure. This obligation of the ship-owner is deeply rooted in centuries of maritime law, and is considered to be an incident of or an implied provision of contracts of maritime employment. See generally Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1937), and Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).

■■ The obligation is not related in any way to negligence or fault of the shipowner, nor is it limited to cases where the seaman's employment is the "cause" of the illness. Calmar S.S. Corp. v. Taylor, supra, 303 U.S. at 527, 58 S.Ct. 651. Typically, admiralty courts have given liberal interpretation to the obligation for the protection of seamen who are considered, in a sense, wards of the court. As the Supreme Court pointed out in Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1942), the obligation of the ship-owner to provide maintenance and cure is among the most pervasive and should not be hampered by restrictive distinctions which would defeat its broad beneficial purposes. Thus even in cases where the Libelant was suffering from a pre-existing illness, the courts have granted maintenance and cure unless it could be shown that the seaman know-

ingly or fraudulently concealed the illness from the shipowner. Couts v. Erickson, 241 F.2d 499 (5th Cir.1957); Rosenquist v. Isthmian S.S. Co., 205 F.2d 486 (2nd Cir.1953); Lipscomb v. Groves, 187 F.2d 40 (3rd Cir.1951); Ahmed v. United States, 177 F.2d 898 (2nd Cir. 1949); and Fish v. Richfield Oil Corp., 178 F.Supp. 750 (S.D.Cal.1959).

In our case the evidence shows that the Libelant entered the service of appellants' vessel suffering from an illness of which he was unaware. There is nothing in the record to support a finding that the Libelant either knew of his illness or deliberately withheld any information concerning it. Although the Libelant was older than the other crewmen and moved somewhat more slowly, the evidence shows that throughout the first voyage he performed the usual arduous duties of a tuna fisherman. And during the second voyage he continued to perform such work until he was stricken with the fainting spells. From that time on, Libelant was unable to carry out his usual duties aboard appellants' boat. It was at the conclusion of this second voyage that the Libelant was fired because he could no longer do his share of the work or keep up with the other crewmen.

■ Libelant thereupon sought medical advice, and the resulting examination revealed that he was suffering from Parkinsonism and would be permanently unfit for duty as a seaman. The exact cause of the fainting spells does not appear in the record. There was lay-opinion testimony by the other crewmen to the effect that Libelant's fainting spells had been merely heat prostration. But we do not find such "diagnoses" made by lay persons necessarily persuasive, nor are they binding on the trial court, especially in light of Libelant's subsequently discovered medical condition. Parkinsonism is a gradually progressive and prolonged disease. The USPHS medical reports in evidence indicate, as early as 1958, that Libelant displayed symptoms similar to those of Parkinson's Disease. It is possible that the fainting spells were caused solely by the heat, solely by the Parkinsonism, or by a combination of both. And it is clear that from the time of the fainting spells Libelant was never again a well man, a well man that is, capable of performing the duties of his employment. In these circumstances we cannot say that the trial court's finding, that Libelant fell ill while in the service of appellants' vessel is clearly erroneous.

■ In answer to the second question presented, the trial court found that Libelant had not been discharged for cause. The appellants also contend that this finding is not supported by the evidence. We do not agree.

Appellants' view of the evidence is that it shows that the Libelant never did satisfactorily perform his duties and that the fainting did not constitute an illness. It is true that the evidence shows Libelant was always somewhat slower in movement than the other crewmen, and it also shows that the basic reason for Libelant's discharge was his inability to do his work or keep up with his fellow crewmen. But the evidence, taken as a whole, also shows that Libelant was satisfactorily doing his work and became unable to work only after suffering the fainting spells. And the evidence shows that he continued in such condition, without significant improvement for the remainder of the second voyage. In these circumstances we cannot say that the trial court's finding, that Libelant was not discharged for cause, is clearly erroneous.

We hold that the trial court's findings do not show clear error, and therefore affirm the judgment.